## SUMMONS

**SUPREME COURT**
**STATE OF NEW YORK        ONTARIO COUNTY**

Index#  *106321*

**WILLIAM F. ROBERTS**
**MALCOLM TRAUB**
                    **PLAINTIFFS**

**Venue is based on the
location of the property**

        **v.**

**VORTEK, a Division of Daktronics Inc., successor to Hoffend and Sons Inc.**
**7200 Rawson Road**
**Victor, NY 14564**

        **DEFENDANT**

_____

**To the above named Defendant**

**YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Attorney for the **PLAINTIFF** within **20** days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

DATED: APRIL 28, 2011

THOMAS JAY SOLOMON,
ATTORNEY FOR THE PLAINTIFF
400 WEST METRO PARK
ROCHESTER, NEW YORK, 14623
585-292-5130
FAX: 585-292-0491

ONTARIO COUNTY CLERK'S OFFICE
FILED

APR 29 2011

JOHN H. COOLEY, County Clerk

by _____
ACTING DEPUTY CLERK

SUPREME COURT
STATE OF NEW YORK          ONTARIO COUNTY

Index#  106321

WILLIAM F. ROBERTS

MALCOLM TRAUB
                    PLAINTIFFS

        v.

VORTEK, a Division of Daktronics Inc., successor to Hoffend and Sons Inc.

                DEFENDANT

_____

## COMPLAINT

Plaintiffs, by their attorney, Thomas Jay Solomon, alleges as follows:

## PARTIES

1. Plaintiff William F. Roberts(Roberts) is a resident of the County of Ontario and State of New York.

2. Plaintiff Malcolm Traub (Truab) is a resident of the County of Monroe, State of New York.

3. Roberts and Traub own 66 School Street and will be referred to herein as Plaintiffs, Landlord or Roberts and Traub.

ONTARIO COUNTY CLERK'S OFFICE
FILED

APR 29 2011

JOHN H. COOLEY County Clerk;
by _____
ACTING DEPUTY CLERK

4. At all times hereafter mentioned, defendant Vortek, a Division of Daktronics Inc., successor to Hoffend and Sons Inc. (Vortek, defendant or tenant) operates its business from the Village of Victor, Ontario County, State of New York..

**COMMON FACTS**

5. Plaintiffs are the owner of real property commonly known as 66 School Street in the Village of Victor, County of Ontario, State of New York. (hereinafter the "Premises" or "Property" ).

6. On July 12, 2001 the Plaintiff's entered into a written lease (Lease) of the property to HOFFEND AND SONS, INC. A copy of which is attached as **EXHIBIT A**.

7. Prior to the Lease being executed the Plaintiff and Defendant exchanged correspondence regarding the lease which includes letters dated November 13, 2000, January 15, 2001, May 15, 2001 and June 11, 2001 (**EXHIBIT B**) all of which show that Hoffend will be responsible for all maintenance on the building & property, including any improvements.

8. The property was described as "Parcel 1 at Hartman Industrial Park, 66 School Street, Victor, New York, being and consisting of a 20,000 square high-bay, steel manufacturing building with attached 5,000 square foot warehouse and 3,000 sq. ft office, hereinafter also referred to as the "Leased Premises."

2

2

9. The initial lease ran from July 12, 2001 to April 31, 2004. The lease was thereafter extended to midnight June 30, 2006. A copy of the written extension signed by Peter Hoffend the President of Hoffend and Sons Inc is attached as **EXHIBIT C.**

10. Sometime between July 28, 2005 and June 30 2006 Vortek, a division of Daktronics acquired Hoffend and Sons, Inc. and assumed the obligations under the Lease.

11. Vortek thereafter extended the lease from July 1, 2006 to December 31, 2007. A copy of the extension signed by Scott D. Seeman the Chief Operating Officer of Hoffend and Sons Inc. is attached as **EXHIBIT D.**

12. On December 26, 2007 Vortek further extended the lease to December 31, 2008 a copy of which signed by David Rossi the Operations Manager, is attached as **EXHIBIT E.**

13. On September 26, 2008, Vortek sent an email, **EXHIBIT F,**, to Roberts informing him that Vortek was relocating their business and would be completely moved out by December 31, 2008.

3

3

14. On October 15, 2008 Roberts sent a letter to Vortek in which he pointed out that the leased premises had to be returned to Roberts and Traub as outlined in section 19 of the lease. A copy of the letter is **EXHIBIT G.**

15. Section 19 of the Lease states: "Tenant shall keep the Leased Premises and every part thereof in good repair during the said term and will surrender the same at the expiration of the term thereof, broom clean, and in as good condition as at the time of taking possession, damage by elements, and normal wear and tear excepted."

16. On January 14, 2009, the Plaintiffs through their attorney wrote a letter (attached as **EXHIBIT H)** to the Defendant listing those items that the Defendant was responsible for repairing under paragraph 19 of the Lease as follows:

a. Overhead crane.

(1). At the start of the lease the existing crane was operable to lift 14 tons.

(2) At the end of the lease Vortex has failed to provide the Plaintiffs with the current lifting capacity of the crane.

(3) The Defendant failed to maintain and repair the crane which among other things needs new brakes, a rebuilt gearbox, 20 Ton Hook and a load test as described in the attached repair quote, **EXHIBIT I,** from Han-Tex:

4

4

b.  Yellow steel bracing I bean testing system inside the building.

(1)The defendant installed a yellow steel bracing I bean testing system which according to paragraph 11 of the lease requires them to remove and restore the area to its previous condition which has not been done.

c. Outside upper 55 foot high cable testing area.

(1) Vortek also installed/attached an Outside upper 55 foot high cable testing area to the building which according to paragraph 11 of the lease the Tenant is required to remove and restore the premises to its previous condition which has not been done.

d.  Paint Booth Area.

(1) Vorteks installed a paint booth area which it permanently attached to the inside of the building and which supposed to have been left but was removed without the landlords consent and allegedly sold.  The exhaust system of the paint booth is still attached to the building as evidenced by a large hole in the side of the building.  Paragraph 11 of the lease clearly makes the Tenant responsible to either restore or replace all improvements to the property of the landlord which it has failed to do in regard to the Paint Booth.

5

e. Bearings in the heating unit in the large warehouse.

(1)The bearings in the furnace in the large warehouse are broken so that the furnace does not work.

f. Wall Lighting Units.

(1) The Tenant removed all of the lighting units off of the walls which according to the lease must be returned and reinstalled.

g. Fire door between the small warehouse and the office.

(1) The Tenant welded shut the steel fire door in between the small warehouse and office area which must now be restored to its prior condition.

h. Fire doors in Large Warehouse.

(1)The six fire doors in the Large Warehouse are missing their panic hardware which must be replaced and restored to its prior condition.

i The large overhead door in the back of the building.

(1) This over head door is damaged and must be either replaced or repaired.

6

6

j. The bearings in the two small overhead heaters in the small warehouse area.

(1) These bearings need to be replaced as the heating unit makes a loud grinding noise.

k. Phase 1.

(1). The Tenant is required to do a phase 1 environmental study of the property to  ensure the landlord that the property is being returned to them free of any contamination.

15.  The Defendant has failed to comply with its obligations under the lease in regard to repairing and maintaining the equipment in the premises or to restore the same when required by the lease  although requested to do so.

16.  The Landlord has complied with all the conditions of the lease required of them.

WHEREFORE, the plaintiff demands judgment against the defendant as follows:

1. $150,000 or for such other sum as shall be equal to all the damages to be proven at the trial of the action plus costs, disbursements and reasonable attorney's fees, and

2. Such other and further relief as the Court determines to be just and proper.

Dated: April 28, 2011

Thomas Jay Solomon
Attorney for the Plaintiffs
400 West Metro Park
Rochester, NY 14623
585-292-5130; fax 585-292-0491

7

7

Thomas Jay Solomon, an attorney licensed to practice in the State of New York, and the attorney for Plaintiff certify that, to the best of his knowledge, information and belief, formed after an inquiry reasonable under the circumstances, the presentation of this pleading, affidavit, affirmation, (or motion if applicable), or the contentions contained therein are not frivolous as defined in 22 NYCRR §130-1.1(c).

Thomas Jay Solomon

*A*

## LEASE AGREEMENT

*THIS LEASE AGREEMENT*, made this 1 2 day of July , 2001, by and between ROBERT MacDONALD, WILLIAM ROBERTS, and MALCOLM TRAUB, having offices located at 3 Railroad Avenue, Victor, New York, 14564, hereinafter referred to as "Landlord;" and HOFFEND AND SONS, INC., with offices located at 66 School Street, Victor, New York, 14564, hereinafter referred to as "Tenant."

## WITNESSETH

*WHEREAS*, Landlord desires to lease to Tenant, and Tenant desires to lease from Landlord, real property in the Town of Victor, County of Ontario, and State of New York, known and described as "Parcel 1" at Hartman Industrial Park, 66 School Street, Victor, New York, being and consisting of a 20,000 square foot high-bay, steel manufacturing building with attached 5,000 square foot warehouse and 3,000 square foot office, hereinafter referred to as "Leased Premises."

*NOW, THEREFORE*, upon the terms, covenants, and conditions herein set forth, the parties agree as follows:

1.     **TERM**:

Landlord hereby leases to Tenant, and Tenant does hereby take and lease from the Landlord, the Leased Premises for a term of three (3) years commencing on the 1st day of May, 2001, and expiring on the 31st day of April, 2004

2.     **RENT**:

Tenant hereby covenants and agrees to pay to Landlord as rent for the Leased Premises, without deduction or offset during the term of this Lease Agreement, as follows:

a.      An annual base rent of Seventy-Two Thousand and 00/100 Dollars ($72,000.00) in equal monthly installments of Six Thousand and 00/100 Dollars ($6,000.00) during the three-year term, except that in addition to the base rent of $6,000.00 per month, any increase in insurance and real property taxes over the base year of 2000 will be added to and be deemed additional monthly rent pro rated at the determination of Landlord. January 2001 rent shall be pro rated to be $3,000.00.

b.      Each of said equal monthly installments for the aforesaid years, except for the first month's payment, are to be paid in advance on the 1st day of each and every month during the term of said Lease, with the first such payment to be made as hereinafter provided on the 1st day of February, 2001. The Tenant shall make the first month's payment to the Landlord on or before the signing of this Lease Agreement.

*A late charge of two percent (2%) will be added to any rent payments received after the 10th day of the month.*

3.    **USE/PREMISES**:

Tenant may use the total premises for its core business and related manufacturing activities. The uses of the total premises are always subject to Tenant, at all times, complying with all of the covenants, conditions, provisions, and terms of this Agreement.

4.    **TAXES**:

During the term of this Lease, Landlord shall pay for all real estate property taxes subject to the additional rental provisions of paragraph "2" above.

2

5.    **UTILITIES, MAINTENANCE, REPAIRS, AND UPKEEP**:

Tenant agrees to pay and be responsible for any and all charges for utilities, maintenance, repairs, building upkeep and any and all other costs incident to the occupancy of the Leased Premises during the term of the Lease. Landlord shall provide snow removal for the main roadway as reasonably necessary at Landlord's cost and expense. Landlord will also be responsible for improvements or repairs to common roadways.

6.    **"AS IS" CONDITION**:

Tenant has and currently occupies the subject Leased Premises as a month-to-month tenant. As such, Tenant has, upon taking possession, accepted the premises in its "as is" condition without defense or setoff against the Landlord.

7.    **ACCESS**:

Landlord shall, at its own cost and expense, construct a blacktop driveway for sufficient access to the Leased Premises (Parcel #1), which shall not encroach upon any other parcels within the park. Said driveway shall be constructed at Landlord's option at any time during the initial three-year term.

8.    **INSURANCE**:

The Tenant, at the Tenant's expense, shall take out and maintain during the term of this Lease, at Tenant's expense, public liability insurance in form satisfactory to Landlord to protect both Landlord and Tenant against any liability to the public, whether to persons or property, incident to the use of or resulting from any accident occurring in or about the premises, and such other areas which the Tenant, its servants, agents, employees, contractors, and invitees shall have the right to use under the terms of this Lease or any occupancy hereunder, in the minimum amount of $500,000.00 to indemnify against the claim of one person and $1,000,000.00 against the claims of two or more

3

persons in any one occurrence, and property damage insurance in an amount of not less than $100,000.00 per occurrence.

All insurance required by this Lease shall be in such form and in such companies as the Landlord shall reasonably approve.

The Tenant shall procure policies for such insurance for each term of the Lease and shall deliver to the Landlord the originals of such policies or certificates thereof, and shall procure renewals thereof from time to time at least twenty (20) days before the expiration of any similar policy then existing, and in default of such delivery, the Landlord may procure any such insurance for such periods as the Landlord may elect, and the Tenant shall, on demand, reimburse the Landlord for all outlays for such insurance with interest thereof at the rate of twelve percent (12%) per annum. Such payments shall be additional rent. Such policies shall further provide that the insurance carrier shall not cancel or fail to renew same without at least thirty (30) days prior written notice to the Landlord.

## 9.   INDEMNIFICATION AND OTHER INSURANCE:

The Tenant agrees to indemnify and save harmless the Landlord from and against all liability, damages, penalties, judgments, or claims of whatever nature arising from injury to person or property sustained by anyone in or about the Leased Premises, except for the willful or negligent acts of the Landlord or its agents, and shall, at its own cost and expense, defend any and all suits or actions which may be brought against the Landlord or in which Landlord may be impleaded with others upon any such above-mentioned matter, claim, or claims. This indemnity and hold harmless agreement shall include indemnity against all costs, expenses, and liabilities incurred in or in connection with any such claim or proceeding brought thereof and the defense thereof.

The Tenant, at its option, is to carry appropriate insurance to protect against any loss of contents, including furniture or furnishings within the Leased Premises. The Tenant will not use or occupy said Leased Premises, nor permit said Leased Premises to be

4

used or occupied for any purpose deemed hazardous on account of fire and will not store, have, or keep therein any material or substance which would increase the hazard of fire.

10.    **COMPLIANCE WITH LAWS**:

Tenant, at its sole cost and expense, shall comply with all laws, orders, and regulations of Federal, State, County and Municipal Authorities, and with any direction of any public officer or officers, pursuant to law, which shall impose any violation, order, or duty upon Tenant with respect to the Leased Premises, or the use of occupation thereof, and Tenant shall comply with all rules, regulations, and requirements of the Fire District, Board of Fire Underwriters or Rating Organization, or any other similar bodies.

11.    **IMPROVEMENTS**:

All improvements, renovations, and additions to the Leased Premises made during the term of this Lease shall, unless Landlord elects otherwise (which election shall be made by giving notice not less than thirty (30) days prior to the expiration or other termination of this Lease or any renewal or extension thereof) become the property of Landlord and shall remain upon and be surrendered with the Leased Premises as a part thereof at the end of the term or renewal term, as the case may be. In the event Landlord shall elect otherwise, then such improvements or additions made by Tenant upon the demised premises during the term of this Lease, as Landlord shall select, shall be removed by Tenant and Tenant shall restore said premises to their original conditions existing at the commencement of this term at its own cost and expenses prior to the expiration of the term.

All such improvements, renovations, and additions or remodeling shall be upon the consent of the Landlord, which consent shall not be unreasonably withheld.

5

12.    **SUBLEASE**:

Tenant shall have the opportunity to sublease a portion of the leasehold premises subject to the approval of the Landlord, which approval shall not be unreasonably withheld. It shall not be deemed unreasonable for the Landlord to review and approve the financial stability of sublessee to its satisfaction. Upon a sublease, Tenant shall remain liable to Landlord for all leasehold obligations subordinate to the primary obligation of sublessee.

13.    **RENEWAL OPTION/PURCHASE OPTION**:

Conditioned upon the Tenant not being in default, and at the end of the initial three-year term of this Lease, Tenant shall have the following options:

a.    To purchase the Leased Premises (inclusive of Parcel #1 and Parcel #8 as so indicated on a site survey prepared by Lozier, Inc., dated September 21, 1988) for the price of Six Hundred Twenty-Five Thousand and 00/100 Dollars ($625,000.00). Seventy-five percent (75%) of the base rent which has been paid during the initial lease term shall be credited to the Tenant off of said purchase price.

b.    To extend the existing Lease upon a Lease/Purchase Agreement, which Agreement is to be memorandized in detail between the parties within seven (7) days from the exercising of said option. Such Agreement shall provide that the Lease be extended for approximately eight (8) years, and upon expiration of that term, Tenant shall have the right to purchase the Leased Premises referred to in paragraph "a" above for the sum of One and 00/100 Dollars ($1.00). In addition, the Agreement shall provide that the Tenant shall have the right to purchase the Leased Premises at any time during the extended term of the Lease for a purchase price of Six Hundred Twenty-Five Thousand and 00/100 Dollars ($625,000.00); said purchase price to be credited by the sum of seventy-five percent (75%) of the total base rent payments paid from the commencement of the initial term of the Lease until the date of purchase.

6

During the option term set forth in paragraphs "a" and "b" above, the Landlord shall not sell the Leased Premises, or any part thereof, during the term of the Lease or any renewal terms without the approval of Tenant.

The above purchase options are granted conditioned upon the sale being a cash sale, as Landlord is not obligated to finance said sale.

Should the Tenant exercise either of the purchase options as set forth above, Landlord shall, under no circumstances, be obligated to pay any real estate commissions.

In the event notice to exercise either of the purchase options is given by Tenant to Landlord, Landlord shall not be obligated to proceed to closing until such time as any and all contingencies of said sale are removed by Tenant, including environmental remediation and survey.  Upon removal of such contingencies, Landlord shall deliver to Tenant or Tenant's attorney at least fifteen (15) days prior to the proposed date of closing a fully guaranteed tax, title, and United States court searches dated, or redated, after the date of the notice of exercise of Tenant's option to purchase, together with a local tax certificate for Village and County taxes and an instrument survey map dated, or redated, after the date of said notice of exercise of said purchase option. Landlord shall pay for the survey or redated survey and for continuing such searches to and including the day of closing. Any survey map shall be prepared or redated and certified to meet the standards and requirements of the Monroe County Bar Association.

Landlord shall deliver to Tenant at closing of property signed and notarized Warranty Deed with lien covenant. The Deed and other documents delivered by Landlord shall be sufficient to convey good, marketable title, and fee simple to the property free and clear of all liens and encumbrances, together with permanent easements, rights-of-way, or access necessary for the continuation of the operation of said property. Tenant agrees to accept title to the Leased Premises subject to restrictive covenants of record, to the tract or subdivision of which the property is a part, provided these restrictions have not been violated, or if they have been violated, that the time for any one to complain of the violations has expired. Tenant also agrees to accept title to the Leased Premises to public

7

utility easements along lot lines as long as those easements do not interfere with any buildings now on the property or with the improvements Tenant may construct in compliance with all present restrictive covenants of record. Closing shall take place on or before ninety (90) days after Tenant gives notice to the Landlord of its option to purchase and removal of any sale contingencies. The exact date of closing to be determined by the Tenant.

14.   **LIENS**:

Tenant shall keep the Leased Premises free and clear of any liens and shall indemnify, hold harmless, and defend Landlord from any liens and encumbrances arising out of any work performed or materials furnished by or at the direction of the Tenant. In the event any lien is recorded, Tenant shall discharge such lien within thirty (30) days of recording, or if Tenant desires to contest any lien, then Tenant may bond the same. In the event Tenant shall fail to pay any lien claim when due or shall fail to bond it, then Landlord shall have the right, but not the obligation, to expend all sums necessary to discharge the lien claim. The Tenant shall pay as additional rent when the next rental payment is due, all sums expended by Landlord in discharging any lien, including reasonable attorney's fees and costs.

15.   **EMINENT DOMAIN**:

If the whole of the Leased Premises shall be acquired or condemned by Eminent Domain for any public or quasi public use or purpose, or any substantial part thereof so acquired or condemned renders the Leased Premises untenantable, or unfit for Tenant's use, then and in that event, the term of this Lease shall cease and terminate from the date of title vesting in such proceeding or the termination of the Tenant's right to possession, whichever is earlier, and Tenant shall have no claim against Landlord for the value of any unexpired term of said Lease, nor any claim to any part of any award in such proceeding, and rent shall be adjusted to the date of such termination. Nothing herein contained shall be deemed to affect or be in derogation of any right or rights of Tenant against the condemning authority to receive reimbursement for relocation expenses or to

8

claim and recover damages to or for the taking of or for the taking of its trade fixtures and equipment resulting from any condemnation of acquisition. If less than the entire Leased Premises is taken, the Tenant can still use the remainder thereof with substantial improvement, this Lease shall remain in effect without reduction in rent, and Tenant shall have not claim against the Landlord, nor shall Tenant be entitled to share in any award from the condemning authority for such taking.

16.    **SUBORDINATION AND NON-DISTURBANCE:**

This Lease and all of the rights of Tenant hereunder are and shall be subject and subordinate to the lien of any mortgage now existing or hereinafter placed on the Leased Premises, or any part thereof, and to any and all renewals, modifications, consolidations, replacements, extensions, or substitutions of any such mortgage or mortgages.

Such subordination shall be automatic, without the execution of any further subordination agreement by Tenant. If, however, a written subordination agreement consistent with this provision is required by a mortgagee, the Tenant agrees to execute, acknowledge, and deliver the same, and in the event of its failure to do so after five (5) days written request, Landlord may, in addition to any other remedies for breach of covenant hereunder, execute, acknowledge, and deliver the same as the agent or attorney-in-fact of Tenant, and Tenant hereby irrevocably constitutes Landlord is attorney-in-fact for such purpose.

17.    **NOTICES:**

All notices and other communications authorized or required hereunder shall be in writing and shall be given by mailing the same by certified mail or registered mail, return receipt requested, postage prepaid, and any other such notice or other communication shall be deemed to have been given when received by the party to whom such notice or other communication shall be addressed. All notices shall be sent to those

9

addresses hereinbefore set forth for Landlord and Tenant or such other address or addresses as they may thereafter designate in the manner herein provided.

18.    DEFAULT:

If Tenant shall fail to pay any part of the rent provided for herein or any other sum required to be paid by Tenant at the time or times or in the manner required, or if Tenant should be dispossessed by any process of law, or if default shall occur in any of the other terms, covenants, or conditions contained in this Lease, and if Tenant shall fail to cure any and all such defaults within thirty (30) days after receipt of written notice of such default (provided that in the event that such default cannot be reasonably cured within such thirty-day period, and if Tenant shall have promptly commenced to cure same within such thirty-day period, the time for such cure shall be reasonably extended), then, and in such event, Landlord, in addition to all other rights or remedies provided for by law, shall have the right to re-enter the Leased Premises immediately and to remove all persons and property located herein, and to store any such property in a public warehouse or elsewhere at the cost of and for the account of Tenant.

Upon any such re-entry, Landlord shall have the right to make any reasonable repairs, alterations, or modifications to the Leased Premises which Landlord, in its sole discretion, deems reasonable and necessary.  After such entry, Landlord shall have the option to terminate this Lease, or without terminating this Lease, to re-let the Leased Premises at such rent and upon such conditions and for such a term, whether less than or greater than the unexpired portion of the term of this Lease, as Landlord deems reasonable and necessary.  Tenant shall pay to Landlord as soon as determined the reasonable costs and expenses incurred by Landlord in such re-letting, including reasonable brokerage and legal fees and the reasonable costs and expenses incurred by the Landlord in making repairs, alterations, or modifications to the Leased Premises.  All sums received by Landlord from such re-letting shall be applied first to the payment of all costs incurred in said re-letting, including, but not limited to, reasonable brokerage and legal fees; second to the payment of the costs of any repairs, alternations, or modifications to the Leased Premises; third, to the payment of any indebtedness of Tenant arising out of this Lease,

10

including rent due and owing; and fourth, to the payment of any rent due and unpaid hereunder, and the balance, if any, shall be held by Landlord and applied in payment of future rent if such future rent may become due and payable. Should the amounts applied towards payment of the rental obligation during any month be less than the rent agreed to be paid during said month by Landlord, this deficiency shall be calculated and paid monthly. No such re-entry or taking of possession of the premises by Landlord shall be construed as an election on Landlord's part to terminate the Lease. Notwithstanding any such re-letting without termination, Landlord may at any time thereafter during the term of this Lease elect to terminate this Lease by virtue of such previous default by Tenant, unless the Leased Premises has been re-let to tenant. In addition to any other remedy Landlord may have, whether or not any re-letting has occurred, Landlord may elect to terminate this Lease and recover from Tenant any damages incurred by reason of such default, including the costs of recovering the Leased Premises, reasonable attorney fees, and the then excess, if any, of the rent due pursuant to the provisions of this Lease for the remainder of the term hereof over the then reasonable rental value of the Leased Premises for the balance of the stated term, which amount shall become immediately due and payable by Tenant to Landlord, less any sums received by Landlord from a re-letting during the balance of what would have been the term hereunder. Such termination shall become effective at the expiration of five (5) days from the time of receipt by Tenant of Landlord's written notice to terminate.

## 19.   CONDITION OF PREMISES:

Tenant shall keep the Leased Premises and every part thereof in good repair during the said term and will surrender the same at the expiration of the term thereof, broom clean, and in as good condition as at the time of taking possession, damage by the elements, and normal wear and tear excepted.

## 20.   SUCCESSORS AND ASSIGNS:

The terms, conditions, and obligations hereof shall be binding upon and inure to the benefit of the successors in interest and assigns of the parties hereto.

21. **WAIVER OF REDEMPTION**:

Tenant hereby expressly waives any and all rights of redemption granted by or under any present or future laws in the event of Tenant being evicted or dispossessed for any cause, or in the event of Landlord obtaining possession of the Leased Premises, by reason of the violation by Tenant of any of the covenants and conditions of this Lease, or otherwise.

22. **QUIET POSSESSION**:

Landlord covenants that if and as long as Tenant pays the rent and all additional payments reserved by this Lease and performs all of the covenants and conditions hereof, Tenant shall quietly enjoy the Leased Premises subject to the terms of this Lease.

23. **INVALIDITY OF PROVISION**:

If any term or provision of this Lease or the application hereof to any person or circumstances shall, to any extent, be invalid or unenforceable, the remainder of this Lease, or the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and each term and provision of this Lease shall be valid and be enforced to the fullest extent permitted by law.

24. **CAPTIONS**:

The captions in this Lease are for convenience only and are not a part of this Lease and do not in any way limit or amplify the terms and provisions of this Lease.

25.    **ENTIRE AGREEMENT**:

This Lease cannot be changed, modified, or discharged in whole or in part, except by a written instrument signed by the party against whom enforcement is sought.

26.    **LAWS GOVERNING**:

This Lease is written under and shall be construed in accordance with the laws of the State of New York.

27.    **LEASE TERMINATION**:

Upon the expiration or termination of this Lease, Tenant shall remove all property of Tenant, and in failing to do so, Landlord may cause all of the said property to be removed at the expense of Tenant, and Tenant agrees to pay all reasonably necessary costs and expenses thereby incurred. If, as the sole result of the removal of the Tenant's property any portion of the Leased Premises or of the building of which they are a part are damaged, the Tenant shall pay to the Landlord the reasonable cost of repairing such damages, unless due to the negligence of the Landlord, its agents, servants, employees, and contractors. The Tenant's obligation to observe or perform this covenant shall survive the expiration or other termination of the term of this Lease. In the event that the Tenant shall continue in occupancy of the Leased Premises after the expiration of the term, such occupancy shall not be deemed to extend or renew the term of this Lease, but Tenant, at the option of Landlord, shall be deemed to be occupying the Leased Premises as a Tenant from month-to-month upon the covenants, provisions, and conditions herein contained insofar as the same are applicable to a month-to-month tenancy at the rental in effect during the last lease year of the term, pro rated and payable for the period of such occupancy.

28.    <u>SIGNS</u>:

Tenant shall have the right to place a sign upon the Leased Premises indicating Tenant's name and use, if permitted by the Village of Victor, Ontario County, State of New York. Such sign shall be constructed and placed in accordance with the rules, regulations, and ordinances of the Town/Village of Victor and County of Ontario, and with the permission of the Landlord, which permission shall not be unreasonably withheld.

29.    <u>BINDING EFFECT</u>:

The terms, provisions, and conditions of this Lease shall be binding upon the executors, administrators, heirs, vendees, and assigns of the respective parties of this Lease.

*IN WITNESS WHEREOF*, the parties hereto have set their hand and seal the day and date first above written.

DATED:    ~~June~~ July 27, 2001    _____
                                    ROBERT MacDONALD

DATED:    ~~June~~ July 27, 2001    _____
                                    WILLIAM ROBERTS

DATED:    ~~June~~ July 27, 2001    _____
                                    MALCOMB TRAUB

DATED:    ~~June~~ July 17, 2001    _____
                                    HOFFEND AND SONS, INC.
                                    By:

14

*β*

## Lease Agreement Questions & Modifications

### Page 2

The comments in section "a." are redundant when compared to Section "4." A suggestion would be to explain all of the tax increase values in Section "4".

Under USE/Premises (Section 3) replace "the design and manufacturing of theatrical stages & equipments with "it's core business and related manufacturing activities"

### Page 3

In section 5, we need to make mention of the fact that we will be responsible only in part with respect to "Common Area Maintenance". If there are improvements or repairs to common roadways, we should not be 100% responsible for the costs of such, and it needs to be mentioned under this section or in the purchase option section

### Page 6

Section "a." - Is the square footage clearly defined elsewhere, if not, should it be here?

Section "b." - Can we remove the word "approximately" from the second sentence?
Section "b." - Eleven years is too long for a commitment in today's business world, we need to split the term up into several increments in order to protect our future cashflow (4-4-3 years)

Section "b." - In the last paragraph we need to elaborate on the potential contingencies (environmental, engineering inspection,our sole discretion)

### Page 7

We need a clearer definition of what easements are currently in place. We also would like to see an Abstract of Title

### All Remaining Pages

OK as the are

### General Comments

Is there a site map that can be referenced to for the lease? Some of it is confusing to me when we discuss common roadways, parcels, and possible easements

Is there any documentation that states the zoning for our parcel(s) as well as the surrounding ones?

What is the motivation for the landlord to offer us such an amicable lease of this nature?

We need to emphasize that all rental payments to date since January 1, 2001 will be applied towards the potential buy out price at the declared rate of 75%.





1160-C Pittsford-Victor Rd.
Pittsford, New York 14534

Tel: (716) 381-6060
Fax: (716) 381-6523

May 15, 2001

Attn: Bob MacDonald
Hartman Industrial Park
66 School Street
P.O. Box 65
Victor, NY 14564

Dear Bob,

Please review the attached document and the corresponding notes on the subsequent draft copies of the pending lease agreement. I will look forward to hearing from you. Thank you.

Best Regards,

Paul Stiles

HOFFEND AND SONS

11/13/2000  15:04    716-381-6523

1160-C Pittsford-Victor Rd.
Pittsford, New York 14534



Tel (716) 381-6060
Fax: (716) 381-6523

November 13, 2000

Mr. Robert McDonald
Hartman Industrial Park
PO Box 65
Victor, NY 14564

Dear Bob:

Below you will find the outline of the verbal agreement we reached on Friday November 10, 2000 regarding the School St. Property:

- Lease term of three years commencing January 1, 2001 (Initial Lease Term).

- Monthly rent will be $6,000 gross (Base Rent). The space will be inclusive of Hoffend's currently occupied space as well as all of the current Charger space including the warehouse. Any future property tax or insurance cost increases over their current level will be added to the $6,000 monthly rental.

- At the end of the Initial Lease Term, Hoffend will have the option to (a) purchase the property (inclusive of Lot 1 and Lot 8 as indicated on site survey prepared by Lozier, Inc. dated 9/21/88) for $625,000 less 75% of the Base Rent which has been paid during the Initial Lease Term or (b) the option to extend the lease on a lease/purchase arrangement for a period of approximately 11 years at the end of which time Hoffend may purchase the property for $1.00. Under option (b), Hoffend will have the right to purchase the property at any time during the lease with the purchase price being calculated as follows: $625,000 less the sum of 75% of the total Base Rent payments paid from the commencement of the Initial Lease Term until the date of purchase.

- The current monthly rental of $7,500 will be waived for the months of November and December 2000.

- Landlord is solely responsible for ensuring access to Hoffend's facility at 66 School St. Within the Initial Lease Term, the landlord agrees to construct a blacktop driveway that is sufficient for Hoffend's access to the property (and does not encroach on any other parcel) within the Initial Lease Term.

- Hoffend is responsible for all maintenance on the building & property, including any improvements. Landlord will provide snow removal for the driveway.

- The landlord will use his best efforts to have the Charger space available for occupancy within 30 days following landlord's notice to Charger to vacate. Landlord will use his best efforts to deliver such notice to Charger by November 15, 2000.

- Hoffend has the landlord's approval to commence with capital improvements to the facility.

I believe the above clearly represents the agreement reached with Don Hoffend. Please indicate your acceptance of the above and return it to my attention.

Sincerely,
Hoffend and Sons, Inc.

Peter E. Hoffend
President

Agreed and accepted:

Signature                                    Date  11/14/00

R. MAC DONALD                                Manager
Print Name                                   Title

# HARTMAN INDUSTRIAL PARK

66 School Street
P.O. Box 65
Victor , New York 14564

January 15 . 2001

**Hoffend and Sons . Inc.**
56 School Street
Victor .New York 14564

Re : **Intent of Lease for Parcel # 1**
       **66 School Street**

Dear Peter ,

This will serve as a letter of "Intent and Agreement " to enter into a lease agreement between the parties , **Hoffend and Son . Inc.** ( hereinafter referred to as tenant)   and **Hartman Industrial Park** ( hereinafter referred to as landlord ) , for the building and property known as **Parcel # 1** at **Hartman Industrial Park** , 66 School Street , Victor , New York .

The terms and conditions of the lease and agreement shall be as accepted in the letter of November 13, 00 an as further outlined and amended below .

   ❏ The term of the lease shall be for three (3) years and shall commence on
      January 1 , 2001 with rent starting on January 15 , 2001,

   ❏ The monthly ( base ) rent shall be in the amount of $ 6000.00 per month
      with the first month of Jan. , 2001 being prorated to $ 3000.00 .
      In addition to the base rent , any increases in the insurance and property taxes
      over the base year ( 2000 ') will be added to and considered as
      additional rent due monthly .

   ❏ Tenant shall have the options as outlined in paragraph 3 of the letter
      of Nov.13 ,2000  ( see attached signed letter )

   ❏ The tenant will lease the building and property in an " as is " condition and
      will be responsible for all maintenance ,repairs and capital improvements
      to the building and property .
      Landlord will provide snow removal for the main roadway at his expense .

   ❏ Landlord is responsible for ensuring access to **Parcel # 1**  for tenant and
      within the initial lease term will construct a blacktop driveway  for
      sufficient access to **Parcel # 1**   which does not encroach upon any other Parcels

If the above represents the intent and agreement , please sign where indicated below and return one (1) copy to me along with a check in the amount of $ 3000 for the January rent which is due and I will proceed to have our attorney draw up a formal lease which represents the above .

Agreed and Accepted :

**Hartman Industrial Park**

R. Mac Donald , Manager                    1/23/01
                                           Date

**Hoffend and Sons, Inc.**

Peter Hoffend , Pres.                      1/30/01
                                           Date



**ELECTRICAL CONTRACTORS**

June 11, 2001

Jeffrey H. Morris
Two West Main Street
Victor, NY 14564

Re.:    Hoffend Lease

Dear Jeff:

Would you please make the changes on page 2, page 7 and page 14. We also need to add a clause and language to allow the tenant to sub-lease a "portion" of the leased space in the event he needs to, subject to approval by the Landlord which approval shall not be unreasonably withheld.

I also have a question as to how we should sign as Hartman. Should it be under the "Inc." part, which we really don't use or should it be with one name as manager (R. MacDonald) or all 3 names since we are Tenants in Common as Hartman Industrial Park.

I also want to start the lease as of May 1st. They are raising an issue with this since the Letter of Intent (see copy attached) indicates it would start January 1st. However, they have sat on this lease since I gave it to them in February which has been their M. O. for 5 years. Additionally, they have been late every month with the rent.

Since all this time has gone by and we still do not have a signed lease and are still revising it, can I start it as of May 1st or do they have a legal position because of the Letter of Intent?

Please review and advise my so we can hopefully finalize this.

Sincerely,

R. MacDonald

Ref.:    morris611

**HIGH VOLTAGE    ■    INDUSTRIAL    ■    COMMERCIAL**

3 Railroad Avenue  •  P.O. Box 65  •  Victor, NY 14564  •  Ph: 716-924-3019  •  Fax: 716-924-3365

# AGREEMENT TO EXTEND LEASE

**LANDLORD: ROBERT Mac DONALD, WILLIAM ROBERTS, and MALCOLM TRAUB**

**TENANT: HOFFEND AND SONS, INC.**

**LEASE: LEASE DATED JULY 12, 2001**

**LEASED PREMISES: 66 SCHOOL STREET, VICTOR, NEW YORK 14564**

The tenants are currently holding over under the terms of the above referenced lease.

The Landlord desires that the above referenced lease be amended as follows:

1. The parties agree to extend the above referenced lease through midnight of June 30, 2006.

2. Effective July 1, 2005, rent is increased to $8,000 a month, an annual rent of $96,000 a year. Rent is due on the first day of the month and is subject to the same terms and conditions of the existing Lease.

3. Landlord to repair roof leaks in the office and electronic departments at landlords expense within 90 days of the signing of this agreement. When option B which is attached hereto and its terms are agreed to, Landlord to fix other roof problems as needed. Landlord to use all reasonable efforts to complete work as outlined in option B (conference and marketing center) within 120 days upon signing of a new lease.

4. Landlord to provide crushed stone and grading outside of overhead door areas sufficient to allow safe passage for all lift trucks and delivery equipment. Landlord to use all reasonable efforts to complete work by September 30, 2005.

5. All other provisions of the existing lease to remain the same except paragraph 13 entitled renewal option/purchase option which is eliminated.

6. The tenant has the option to extend the term of the lease which ends at midnight of June 30, 2006, for one year at a monthly rate of $8,500 under the same terms and conditions of the lease as extended herein.

7. The tenant must exercise its option to renew by sending the Landlord written notice of its intention to exercise the option. The Landlord must receive this notice on or before midnight of March 30, 2006. The notice shall be sent or delivered personally to William F. Roberts at 400

JUN-29-2005  12:39                                        5852920491    P.03/03

West Metro Park, Rochester, NY 14623 or to such other address as is given to Tenant by certified mail.

In witness whereof the parties hereto have set their hands and seals as hereafter dated.

Dated:

7-28-05

William F. Roberts

Malcomb Traub

Hoffend and Sons. Inc.

Pres.

TOTAL P.03

*C*

# AGREEMENT TO EXTEND LEASE

**LANDLORD**: WILLIAM ROBERTS, and MALCOLM TRAUB

**TENANT**:   HOFFEND AND SONS, INC.

**LEASE**:   LEASE DATED JULY 12, 2001

**LEASED PREMISES**:   66 SCHOOL STREET, VICTOR, NEW YORK 14564

The tenants are currently holding over under the terms of the above referenced lease.

The Landlord desires that the above referenced lease be amended as follows:

1. The parties agree to extend the above referenced lease through midnight of December 31, 2007.

2. Effective July 1, 2006, rent is increased to $9,000 a month, an annual rent of $108,000 a year. Rent is due on the first day of the month and is subject to the same terms and conditions of the existing Lease.

3. All other provisions of the existing lease to remain the same except paragraph 13 entitled renewal option/purchase option which is eliminated.

4. The tenant has the option to extend the term of the lease which ends at midnight of December 31, 2007, for six month at a monthly rate of $9,500 under the same terms and conditions of the lease as extended herein.

5. The tenant must exercise its option to renew by sending the Landlord written notice of its intention to exercise the option. The Landlord must receive this notice on or before midnight of September 1, 2007. The notice shall be sent or delivered personally to William F. Roberts at 400 West Metro Park, Rochester, NY 14623 or to such other address as is given to Tenant by certified mail.

In witness whereof the parties hereto have set their hands and seals as hereafter dated.

Dated:

_____
Malcomb Traub

_____
William F. Roberts

Hoffend and Sons. Inc.

_____
Pres.

*COO*

12-26-'07 11:41  FROM-DAKTRONICS HOIST          5859240545          T-192  P001/001 F-606
12-20 '07 14:53  FROM-                          585-292-0491        T 123  P001/001 F-601   ⅃

## AGREEMENT TO EXTEND LEASE

**LANDLORD: WILLIAM ROBERTS, and MALCOLM TRAUB**

**TENANT:** Vortex, a division of Daktronics Inc. successor to HOFFEND AND SONS, INC.

**LEASE:** LEASE DATED JULY 12, 2001

**LEASED PREMISES:** 66 SCHOOL STREET, VICTOR, NEW YORK 14564

The tenants are currently holding over under the terms of the above referenced lease.

The Landlord desires that the above referenced lease be amended as follows:

1. The parties agree to extend the above referenced lease through midnight of December 31, 2008.

2. The rent will be $9,500 a month, an annual rent of $114,000.00 a year. Rent is due on the first day of the month and is subject to the same terms and conditions of the existing Lease.

3. All other provisions of the existing lease to remain the same except paragraph 13 entitled renewal option/purchase option which is eliminated.

In witness whereof the parties hereto have set their hands and seals as hereafter dated.

Dated: December     , 2007

_____
Malcomb Traub

_____
__William F. Roberts

Vortex, a division of
Daktronics Inc.

By: _____
David Rossi,
Operations Manager
12/26/07

Ĝ

**HARTMAN INDUSTRIAL PARK**  66 School Street
400 West Metro Park
Rochester, New York 14623
Phone 585-424-2430
Fax 585-292-0491

Michael Cooper
David Rossi, Operations Mgr
Vortex, a Division of Daktronics, Inc.
66 School Street
Victor, New York  14564

Re: Termination of Lease

Gentleman;

We have received your notification by fax dated September 26, 2008 that Vortex, a Division of Daktronics, Inc will not renew its lease for the premises at 66 School Street Victor, New York.  Your fax also stated that Vortex will be completely moved out by December 31, 2008.

In this connection under the terms of the lease it is required that the premise be returned to us as outlined in section 19 of the lease.  It will be necessary that you meet with Mr. Malcomb Traub, owner to complete an inspection of the premises to determine if any conditions might exist that have to be resolved.  Also, it will be required that a Phase I Environmental inspection be preformed as there has been painting, cleaning and other solvents used in the assembly and fabrication process over the 12 year lease period.

We would appreciate you cooperation in this process.

Sincerely

William Roberts                                            Date  10/15/08

Malcomb Traub                                            Date _____

H

**THOMAS JAY SOLOMON P.C.**
ATTORNEY AT LAW
**400 WEST METRO PARK**
**ROCHESTER, NEW YORK, 14623**
585-292-5130
Fax: 585-292-0491
Email: tslaw@frontiernet.net

THEODORE H. SOLOMON
1911-1972

Admitted to Practice
New York
Georgia
Florida
North Carolina
South Carolina

May 18, 2009

Michael J. Cooper
Daktronics/Vortek
610 East 54th Street
Sioux Falls, SD
Re: Condition of leased property at 66 School Street, Victor, NY 14564

Dear Mr. Cooper

I represent the Landlords of 66 School Street, Victor, NY which your company has leased for approximately the last 15 years. I understand that you have vacated the property as of December 31, 2008 so that it now becomes necessary to settle my client's compensation for the condition of the property.

According to paragraph 19 of the lease you are responsible to keep the leased premises and every part thereof in good repair and will surrender the same broom clean, and in as good condition as at the time of taking possession excepting damage by the elements and normal wear and tear. Accordingly my clients request compensation for the following:

1. Overhead 25 ton crane. At the start of the lease the existing crane was operable to lift 25 tons. During the lease, OSHA required that you make certain repairs so that the crane could continue to lift 25 tons. According to my clients your repairs only allowed the crane to be certified for 14 tons so now you must bring the crane up to 25 tons. The estimated cost of this repair is $11,470.00.

2. Yellow steel bracing I bean testing area inside the building. My clients tell me that you installed this testing area and according to paragraph 11 of the lease you are obligated to remove it and restore the area to its previous condition. The estimated cost to remove and restore to its previous condition is $5,000.00.

1

3. Outside upper 55 foot high cable testing area. You installed this testing area during the lease term and according to paragraph 11 of the lease you must remove it and restore the premises to its previous condition. The estimated cost to remove is $10,000.00.

4. Paint Booth Area. You installed the paint booth area by making it permanently attached to the inside of the building. I understand that Dave Rossi gave the paint booth to an employee and as of this date the complete booth sits outside of the building broken down into its parts but the exhaust system of the paint booth is still attached to the building. Paragraph 11 clearly makes all improvements the property of the landlord. My clients request that the paint booth area be restored or replaced. The estimated cost to replace is $30,000.00.

5. Blowing bearing in the heating unit in the large warehouse. The blowing bearing is shot and I understand that during the walk through you agreed to repair it. It cost us $3,000 to replace the bearing.

6. Lighting Units in the Warehouse. You took all of the lighting units off of the walls and according to the lease you must return and reinstall them. There are eight lighting units which cost $500 each for a total of $4,000.00.

7. Welded Steel Fire Door. You welded shut the steel fire door in between the small warehouse and office area. You must restore the fire door to its prior condition. It will cost $2,000 to replace the door.

8. Fire Doors in Large Warehouse. Each of these doors is missing its panic hardware and must be replaced and restored to its prior condition. There are six doors which cost $3,200 each for a total of $19,200. You must also repair or replace the large overhead door in the back of the building. We are waiting for an estimate.

9. Two small overhead heaters in the small warehouse area. They rattle and are noisy. They need new bearings. The estimated cost is $2,000 each for a total of $4,000.00.

10. Phase I. You are required to do a phase 1 environmental study of the property. This will ensure the landlord that you are returning the land to him free of any contamination. My client has a quote for $3,000.00.

Please let us know how you plan to take care of these problems.
Sincerely

Thomas Jay Solomon
cc William F. Roberts
    Malcolm Traub
    Dave Rossi



100 Rawson Road Bldg 220
Victor, NY 14564
Phone: 585.924.2200
Fax:585.924.2328

ISO 9001:2008 REGISTERED

| Quote Date | Quote Number |
|---|---|
| 7/20/2010 | QAR46100629 |

**REPAIR QUOTE**

To: Malcolm Traub
1668 Creek St.
Rochester, NY 14625

Attn:   Bill Roberts

Phone:   585-729-0783
Email:   broberts@e-upstate.net

Fax:

| QUOTATION PREPARED BY | CUSTOMER REQUEST NO. | QUOTE EFFECTIVE TO | Terms |
|---|---|---|---|
| Kevin Flynn | | 8/19/2010 | Net 30 |

| Line No. | Service Description | Price |
|---|---|---|
| 1 | Labor<br>148.00  Hrs. Labor & Travel | $   12,180.40 |
| | Material: Bridge Brake, Capacity Markings, Main Hoist Brake, Aux Hoist Brake, Rebuild Leaky Gearbox main & Aux. | 9,743.77 |
| 2 | Labor<br>52.00  Hrs. Labor & Travel | $    4,279.60 |
| | Material: Wire Rope for main & Aux. hoist, trolley brake, 20 Ton Hook and Load Test | 12,045.89 |
| 3 | Electrial Work on Crane to get all 3 Speeds Working (Will be done on Time & Material)<br>0.00  Hrs. Labor & Travel | $          - |
| | **\*\*\* Shipping & Handling Charges Will Be Added \*\*\*** | |
| | **\*\*\* Please Note \*\*\***<br>This is intended to be a bugetary estimate.  All hours, material, shipping & handling and equipment charge will be billed at actual usage based on Han-Tek's current billing rates. | |

Overnite Stay  $          -
Equipment charges to complete the above repairs  $      1,725.00
Additional Cost per day for Equipment Rental          115.00
**TOTAL ESTIMATED PRICE**          $39,974.66

Please note that costs on this quote are based upon all repairs being performed at one time.  This price does not include any applicable taxes.

# BUDGETARY ESTIMATE

Revision Date: October 29, 2009

SUPREME COURT
STATE OF NEW YORK        ONTARIO COUNTY

                                    Index#

WILLIAM F. ROBERTS

MALCOLM TRAUB

            PLAINTIFFS

      v.

VORTEK, a Division of Daktronics Inc., a successor t Hoffend and Sons Inc.

            DEFENDANT

## SUMMONS and COMPLAINT

THOMAS JAY SOLOMON, P.C.
ATTORNEY FOR THE PLAINTIFFS
WILLIAM F. ROBERTS and MALCOLM TRAUB
Office and Post Office Address Telephone
400 WEST METRO PARK
ROCHESTER, NEW YORK 14623
585-292-5130
FAX 585-29200491
EMAIL: tslaw@frontiernet.net

Service of a copy of the within            is hereby admitted.

Dated,

...........................

Attorney(s) for